## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **CHERYL KIRK,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO. 15-CV-833** |
| | § | |
| **v.** | § | |
| | § | |
| **INVESCO, LTD,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § | |
| | § | |

## <u>DEFENDANT INVESCO LTD.'S MOTION FOR SUMMARY JUDGMENT</u>

Yvette V. Gatling (Attorney in Charge)
TX State Bar No. 24007231
Federal ID No. 24321
ygatling@littler.com
1301 McKinney Street, Suite 1900
Houston, Texas 77010
713.951.9400 (Telephone)
713.456.2481 (Facsimile)

OF COUNSEL

Jonathan Sprague
TX State Bar No. 24075113
Federal ID No. 1132053
jsprague@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, Texas 77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)

**ATTORNEYS FOR DEFENDANT
 INVESCO LTD.**

TABLE OF CONTENTS

PAGE

I.    NATURE AND STAGE OF THE PROCEEDING ........................................... 1

II.   STATEMENT OF THE ISSUES TO BE RULED ON BY THE COURT ...................... 2

      A.    Issues on which Invesco Seeks Summary Judgment ............................ 2

            1.    Is Kirk exempt from overtime under the FLSA's administrative
                  exemption? ................................................................... 2

            2.    If the Court determines there is a fact issue precluding summary
                  judgment on Kirk's exempt status, has Kirk met her burden of
                  proving she performed work for which she was not properly
                  compensated? ................................................................ 2

            3.    If the Court determines there is a fact issue precluding summary
                  judgment on Kirk's exempt status, is Kirk entitled to only "half-
                  time" under the fluctuating workweek method of calculating
                  overtime? ..................................................................... 2

            4.    If the Court determines there is a fact issue precluding summary
                  judgment on Kirk's exempt status, has Kirk produced evidence that
                  Invesco acted willfully in violation of the FLSA? ..................... 2

      B.    Standard of Review ................................................................ 2

III.  SUMMARY OF THE ARGUMENT ........................................................ 2

IV.   STATEMENT OF FACTS ................................................................. 3

      A.    Kirk was employed by Invesco as an IT Training Manager, and her
            primary job duties involved, among other things, managing Invesco's IT
            training team and developing and delivering training ........................ 3

      B.    Invesco required Kirk to keep track of her time and accurately record time
            she worked ........................................................................ 7

V.    ARGUMENTS AND AUTHORITIES ...................................................... 8

      A.    Invesco is entitled to summary judgment on Kirk's claim for overtime
            under the FLSA ................................................................... 8

            1.    Kirk was paid on a salary basis ........................................... 9

            2.    Kirk's primary duty was the performance of nonmanual work
                  related to Invesco's management and business operations ............. 9

    3.    Kirk exercised independent judgment and discretion.............................. 11

B.    Kirk cannot meet her burden of proving she performed work for which she was not properly compensated or that Invesco's time records are "inaccurate or inadequate."............................................................................ 14

C.    If Kirk is found to be nonexempt, the fluctuating workweek method applies, and Kirk is entitled only to "half-time" and is not entitled to "time-and-a-half."........................................................................................ 16

D.    Kirk cannot show willfulness as a matter of law .................................. 18

VI.    CONCLUSION.................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Mt. Clemens Pottery Co.,*
    328 U.S. 680 (1946)..................................................................................................14

*Bernard v. Grp. Publ'g, Inc.,*
    970 F. Supp. 2d 1206 (D. Colo. 2013)............................................................10, 13

*Blackmon v. Brookshire Grocery Co.,*
    835 F.2d 1135 (5th Cir. 1988) ..................................................................16, 17

*Carson v. J Curt Inc,*
    No. 1:06-cv-98, 2008 U.S. Dist. LEXIS 78163 (N.D. Fla. Sept. 11, 2008) ......................15, 16

*Cheatham v. Allstate Ins. Co.,*
    465 F.3d 578 (5th Cir. 2006) ..................................................................................11

*Claeys v. Gandalf Ltd.,*
    303 F. Supp. 2d 890 (S.D. Ohio 2004) ....................................................................19

*Crayton v. Valued Servs. of Ala., LLC,*
    737 F. Supp. 2d 1320 (M.D. Ala. 2010) ..................................................................13

*El v. Potter,*
    No. 01-cv-6125, 2004 U.S. Dist. LEXIS 24447 (S.D.N.Y. Dec. 13, 2004) ......................19

*Gilson v. Indaglo, Inc.,*
    581 F. App'x 832 (11th Cir. 2014) ..........................................................................15

*Krumholz v. Village of Northport,*
    873 F. Supp. 2d 481 (E.D.N.Y. 2012) ..................................................................2, 10

*Lipnicki v. Meritage Homes Corp.,*
    No. 3:10-cv-605, 2014 U.S. Dist. LEXIS 32951 (S.D. Tex. Feb. 13, 2014) ......................18

*Little v. Liquid Air Corp.,*
    37 F.3d 1069 (5th Cir. 1994) ....................................................................................2

*McKee v. CBF Corp.,*
    299 F. App'x 429 (5th Cir. 2008) ............................................................................8

*McLaughlin v. Richland Shoe Co.,*
    486 U.S. 128 (1988)..........................................................................................18, 19

*Mireles v. Frio Foods,*
    899 F.2d 1407 (5th Cir. 1990) ................................................................................19

*Morales v. Compass Grp., PLC*,
    No. 2:13-cv-9231, 2014 U.S. Dist. LEXIS 150114 (C.D. Cal. Oct. 16, 2014) .......................14

*Rosales v. Lore*,
    149 F. App'x 245 (5th Cir. 2005) ...............................................................................14, 15

*Schreckenbach v. Tenaris Coiled Tubes, LLC*,
    No. 4:11-cv-4065, 2013 U.S. Dist. LEXIS 6744 (S.D. Tex. Jan. 16, 2013)...........................17

*Songer v. Dillon Res., Inc.*,
    618 F.3d 467 (5th Cir. 2010) ...............................................................................................18

*Tolentino v. C & J Spec-Rent Servs. Inc.*,
    No. 2:09-cv-326, 2010 U.S. Dist. LEXIS 69404 (S.D. Tex. Jul. 12, 2010) ..........................17

*Verkuilen v. Mediabank, LLC*,
    No. 1:09-cv-3527, 2010 U.S. Dist. LEXIS 50538 (N.D. Ill. May 19, 2010)...........................13

**STATUTES**

29 U.S.C. § 213(a) .........................................................................................................................8

29 U.S.C. § 255(a) .......................................................................................................................18

Fair Labor Standards Act ...............................................................................................................1

FLSA.................................................................................................................................... passim

**OTHER AUTHORITIES**

5 C.F.R. § 551.104 .......................................................................................................................19

29 C.F.R. § 541.200(a).....................................................................................................................8

29 C.F.R. § 541.200(a)(1)................................................................................................................9

29 C.F.R. § 541.202(a)...................................................................................................................11

29 C.F.R. § 541.202(c)........................................................................................................11, 12, 13

29 C.F.R. § 541.202–.203 ..............................................................................................................13

29 C.F.R. § 541.700(a).....................................................................................................................9

29 C.F.R. § 541.700(b).....................................................................................................................9

29 C.F.R. § 778.114(a)...................................................................................................................17

29 C.F.R. § 778.114(c)..............................................................................................................17, 18

Fᴇᴅ. R. Cɪᴠ. P. 56(c) ....................................................................................................2

Rule 30(b)(6)...............................................................................................................3

v.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHERYL KIRK, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 15-CV-833 |
| | § | |
| v. | § | |
| | § | |
| INVESCO, LTD, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |
| | § | |

## DEFENDANT INVESCO LTD.'S MOTION FOR SUMMARY JUDGMENT

Defendant Invesco Ltd. (Invesco) moves for summary judgment on all of Plaintiff Cheryl Kirk's (Kirk) claims in this lawsuit and shows as follows:

### I.  NATURE AND STAGE OF THE PROCEEDING

Kirk, a former IT Training Manager for Invesco, alleges Invesco misclassified her as exempt from overtime in violation of the Fair Labor Standards Act and failed to pay her for time she worked over 40 hours in a week.  Kirk, however, is exempt from overtime under the FLSA's administrative exemption, and Kirk cannot show that she performed work for which she was not properly compensated.  Further, Kirk cannot show that Invesco "willfully" violated the FLSA. Invesco therefore moves for summary judgment.

Kirk filed this case on March 31, 2015.  The discovery deadline was November 30, 2015. Docket call is set for May 27, 2016.

## II.  <u>STATEMENT OF THE ISSUES TO BE RULED ON BY THE COURT</u>

### A.  **ISSUES ON WHICH INVESCO SEEKS SUMMARY JUDGMENT**

1.  Is Kirk exempt from overtime under the FLSA's administrative exemption?

2.  If the Court determines there is a fact issue precluding summary judgment on Kirk's exempt status, has Kirk met her burden of proving she performed work for which she was not properly compensated?

3.  If the Court determines there is a fact issue precluding summary judgment on Kirk's exempt status, is Kirk entitled to only "half-time" under the fluctuating workweek method of calculating overtime?

4.  If the Court determines there is a fact issue precluding summary judgment on Kirk's exempt status, has Kirk produced evidence that Invesco acted willfully in violation of the FLSA?

### B.  **STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  In FLSA misclassification cases, disputes regarding certain job duties and responsibilities do not preclude summary judgment.  *Krumholz v. Village of Northport*, 873 F. Supp. 2d 481, (E.D.N.Y. 2012) (granting summary judgment for employer on administrative exemption, noting [a]lthough certain aspects of plaintiff's other duties and responsibilities are disputed, these factual disputes do not preclude summary judgment in defendant's favor on this issue because, even if these factual disputes were resolved in plaintiff's favor, she would still be subject to the administrative exemption, as a matter of law, given the uncontroverted duties and responsibilities discussed above").

## III.  <u>SUMMARY OF THE ARGUMENT</u>

Invesco is entitled to summary judgment because:

Kirk was properly classified as exempt under the FLSA's administrative exemption because her primary duties consisted of, among other things, managing Invesco's IT training team and developing and delivering training material and required discretion and independent judgment.

If the Court determines there is a fact issue precluding summary judgment for Invesco on Kirk's exempt status:

Kirk cannot meet her burden of proving she performed work for which she was not properly compensated.   Invesco's records of the time Kirk worked are proper and accurate, and Kirk has not produced evidence showing the amount and extent of work she performed for which she was not properly compensated.

Kirk understood that her salary was intended to cover all hours worked; she therefore is entitled only to "half-time" under the fluctuating workweek method and is not entitled to "time-and-a-half."

Kirk can produce no evidence that Invesco acted willfully in violation of the FLSA.  Kirk therefore is not entitled to a three-year statute of limitations on her claims.

## IV.    STATEMENT OF FACTS

### A.    Kirk was employed by Invesco as an IT Training Manager, and her primary job duties involved, among other things, managing Invesco's IT training team and developing and delivering training.

Invesco is an asset management firm offering a variety of investment products that are solder through third-party advisors.  *See* Ex. A. Soanes Dep. as Invesco's Rule 30(b)(6) at 22:11-23:1.  Kirk began employment with Invesco on April 15, 2011.  *See* Ex. B. Kirk Dep. at 80:25-81:3.  Kirk's position with Invesco was IT Training Manager.[1]  *Id.* at 81:4-5.  Beginning in or about late-2012/early-2013, Kirk began reporting primarily to Lisa Soanes, Invesco's Head of IT Risk and Controls, Software Compliance, and IT Training.  Ex. C. Soanes Dep. in Individual Capacity at 6:10-12, 42:12-14; Ex. B, Kirk's Dep. at 5:22-24, 13:24-25, 21:11-16.

When Ms. Kirk began with Invesco, Invesco paid Kirk $80,000 per year, which she received regardless of the number of hours worked.  *See* Ex. B, Kirk Dep. at 185:23-186:7,

---

[1]    Before becoming an Invesco employee, Kirk previously performed work for Invesco on a contract basis while employed by Matrix, an entity unrelated to Invesco.  Id. at 55:22-25.

3

195:10-196:7.  Indeed, Kirk's deposition testimony demonstrates that Kirk understood she would be and was paid the same amount regardless of the number of hours she worked, even if she worked more than 37.5 hours in single week.  *See id.* at 195:1-3, 195:10-15, 195:24-196:7, 255:7-13.  Kirk was not instructed as to when to arrive at and leave work, and her hours fluctuated on a weekly basis.  *See* Ex. D – D. Jordan Dep. in Individual Capacity at 33:2-6; *see, e.g.,* Ex. E – Kirk's Progress and ServiceNow Time Records for her employment at 3–11, Ex. B, Kirk Dep. 206:16-20.

As IT Training Manager, Kirk was responsible for training IT and non-IT staff on various matters, including certain Microsoft and other applications like ServiceNow and SharePoint.  Ex. F – Job Description; Ex. B, Kirk Dep. at 83:13-84:6, 90:12-22, 91:13-18, 112:9-12, 115:3-10, Ex. A., Lisa Soanes Dep. 82:13-20.  This includes Kirk working with IT and others to ensure training programs are proactively identified.  Ex. B, Kirk Dep. at 112:15-23.  To that end, Kirk was responsible for planning, developing, conducting, and executing training programs, including in-person and online classes, videos, and quick reference guides.  Ex. B, Kirk Dep. at 114:10-20, 132:11-14, 144:14-18; Ex. C, Soanes Dep. at 38:10-13; Ex. D, D. Jordan Dep. at 62:16-25.  In 2012, for example, Kirk delivered at least 35 SharePoint training sessions and assisted in developing new hire training.  *See* Ex. B, Kirk Dep. at 144:24-146:4; Ex. G – Kirk's 2012 Performance Review at 454, 456.  Kirk also created training materials for a two-day class when working with the Agile Center of Excellence group and created, customized, and delivered training materials for Microsoft Lync.  *See* Ex. B, Kirk Dep. at 151:14-23, 152:11-153:1.  Kirk also worked on creating a pilot Compass curriculum, ServiceNow materials, and a new hire SharePoint site.  *See id.* at 175:5-9, 178:11-179:3, 181:20-182:5; Ex. H – Kirk's 2013 Performance Review at 467.  Most recently, Kirk worked on ServiceNow training, including

creating PowerPoint presentations and performing the training.  Ex. B, Kirk Dep. at 200:15-25.
Kirk spends no less than 20% of her time (and as much as 25-30%) creating these types of
courses or materials or performing training.  *See* Ex. B, Kirk Dep. at 89:12-24, 97:2-6, 98:9-12.

As stated above, Kirk's training-related duties included creating courses and training
plans, which included PowerPoint presentations for trainings, which Kirk created by, among
other things taking "key points out of the material" and "putting them into the PowerPoint
presentation" and teaching classes and performing and presenting the training.  Ex. B, Kirk Dep.
at 86:4-19, 88:6-8, 125:4-8, 136:10-137:18, 138:20-22, 139:6-12.   As for the PowerPoints
themselves, Kirk created them based on her independent knowledge of how to use PowerPoint
and her creativity.  *See id.* at 141:15-21, 142:5-9, 168:17-25.  Similarly, Kirk also designed a
SharePoint site, which involved deciding where to put certain items.  *See id.* at 147:21-148:12.
Finally, along these lines, Kirk's duties also included creating, drafting, and sending out IT
training newsletters, for which Kirk decided the content, such as classes that are being done and
free webinars from vendors.  *See id.* at 98:24-99:8, 101:1-10, 101:23-25.  Kirk testified that in
performing her duties, such as creating training materials, she had to be creative at times.  *See id.*
at 155:7-14.

Kirk also purchased external training from external vendors, updated Invesco's learning
management system, and loaded self-paced training purchased from vendors into the learning
management system.  *Id.* at 83:13-24.  Kirk's duties with respect to training also included
booking and enrolling individuals for training classes.  *See id.* at 84:7-18, 125:4-7; Ex. A, Soanes
Dep. at 48:12-18.  With respect to the IT training team and staff, Kirk also managed the IT
training team, set goals and objectives, prioritized day-to-day activities for the IT training team,
communicated with staff regarding training, and oversaw and performed performance

evaluations for the other IT training team member position. Ex. B, Kirk Dep. at 83:13-84:6, 116:23-117:9, 120:24-121:14, 121:17-21. Regarding the team member position that reported to Kirk, Kirk told her what to do on a day-to-day basis. Ex. B, Kirk Dep. at 184:13-15. Kirk even highlighted her management skills in her 2014 performance review where she wrote:

> I do believe I've demonstrated management skills and capabilities that go far beyond doing individual tasks and have performed the management role effectively. And I believe I've successfully managed Pranita, coaching and mentoring her to handle more requests the year she was actively engaged than any other year in the history of the department.

Ex. I – Kirk's 2014 Performance Review at 494.

Regarding the IT training department, Kirk made on a day-to-day basis decisions such as whether to update Invesco's Compass system, whether to contact desktop support to ensure software was set up for training and what to work on that day.[2] *See* Ex. B, Kirk Dep. at 248:22-249:13. With respect to Compass, Kirk would maintain the system and ensure that all self-paced training purchased is up-to-date and maintained, including licensing and managing the licensing to employees to have access to the training. *Id*. at 151:8-11; Ex. A, Soanes Dep. at 54:13-25.

Although Kirk did not select vendors for training directly, she was involved in the vendor selection process by, among other things, "rounding up all the information" and keeping track of who the vendor was and the discount the vendor would provide. *See* Ex. B, Kirk Dep. at 103:13-104:19. This included Kirk selecting vendors to call based on doing business with them previously, communicating with the vendors by phone and email, presenting the list from which vendors should be selected to management, and soliciting bids from vendors. *See id.* at 105:8-106:5, 110:10-12, 119:6-25, 120:12-23, 259:25-260:19. Similarly, regarding Kirk's presentation of ideas to management, Kirk wrote in her 2014 performance review:

---

[2]   Compass is Invesco's training system where Invesco records all training that is requested, approved, denied, or taken. Ex. A, Soanes Dep. at 54:6-12. Compass also contains access to recorded training and registration for live and virtual training and self-paced training material. *Id.*

> I've identified changes that were needed and presented those to senior management, <u>and the group approved them all</u>. I think that says a great deal about my ability to recognize changes that need to happen in order for us to move forward and to be able to present them to senior level leaders in a clear and concise fashion. The changes will reduce hours and waste in many of our processes.

Ex. I at 494 (emphasis added).

Kirk's duties also required her to track spending, and she also made sure to "report back to management on how much money" was spent. *See* Ex. B, Kirk Dep. at 84:7- 85:18, 117:1-9. In the course of handling training for all of IT, Kirk's team had to discuss with senior management the money being allocated for external training and whether the team exceeded the budget. *See id.* 135:5-11. Kirk also wrote in her 2012 performance review that "[w]e missed the mark with the budget, and that will be a major focus for next year. *See* Ex. G at 453; Ex. B at 133:6-9. In her 2014 performance review, Kirk wrote that she "made sure the money is tracked properly so that each dollar spent is tied to an employee or can be verified as an expenditure for all of IT through the group" and that she "identified the need to centralize all spend, in an effort to fix issues with recording spend so that we can provide [sic] more accurate picture of what is being spent." Ex. I at 495.

### B.   Invesco required Kirk to keep track of her time and accurately record time she worked.

Invesco maintains a time keeping system called ServiceNow, in which certain employees—including Kirk—were required to record their time worked.[3] Ex. A, Soanes' Dep. at 10:15-11:1; Ex. C at 89:8-14; Ex. B, Kirk Dep. at 201:20-202:1, 202:15-17. ServiceNow is the program that allows Invesco to determine the time employees like Kirk worked. Ex. A, Soanes Dep. at 10:15-11:14. Kirk even admitted that since the beginning of 2014, she knew she

---

[3]   Invesco's time keeping program before ServiceNow was known as Progress. Ex. A, Soanes' Dep. at 10:25-11:1.

should record all of her time in ServiceNow and that even though she knew she was supposed to enter her time accurately, she chose to violate that policy.[4]  *See* Ex. B, Kirk Dep. at 220:19-221:6, 222:7-10.   Invesco's ServiceNow records, including those pertinent to Kirk, should be accurate because Invesco asked Kirk to enter her time worked into the records.  *See* Ex. A, Soanes Dep. at 15:20-16:6.

## V.     ARGUMENTS AND AUTHORITIES

### A.     Invesco is entitled to summary judgment on Kirk's claim for overtime under the FLSA.

Kirk's claim against Invesco for failure to pay her overtime in violation of the FLSA fails.  The record in this case—particularly Kirk's own testimony—demonstrates that Kirk was properly classified as exempt from the FLSA's overtime requirements.  Kirk's primary job duties and responsibilities qualify her for exempt status under the administrative exemption.

The FLSA overtime requirements do not apply to employees who work in a bona fide administrative capacity.  *See* 29 U.S.C. § 213(a).  The administrative exemption applies to an employee (1) who is compensated on a salary or fee basis at a rate of not less than $455 per week; (2) whose primary duty is the performance of office or nonmanual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.  *McKee v. CBF Corp.*, 299 F. App'x 429, 429 (5th Cir. 2008) (citing 29 C.F.R. § 541.200(a)).

An employee's "'primary duty' means the principal, main, major, or most important duty that the employee performs" and considers, among other things, "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing

---

[4]     Kirk never entered time from June 2015 through October 2015.  Ex. A, Soanes Dep. at 19:15-25.

exempt work; [and] the employee's relative freedom from direct supervision." 29 C.F.R. § 541.700(a). Notably, time "is not the sole test," and an employee need not spend "more than 50 percent of their time performing exempt work" to be exempt. *Id.* § 541.700(b).

### 1. Kirk was paid on a salary basis.

Kirk testified that she was paid on a salary basis and that she earned well over $455 per week, regardless of the number of hours she worked. Ex. B, Kirk Dep. at 185:23-186:7, 195:10-196:7. Kirk therefore meets the salary basis prong of the administrative exemption. *See* 29 C.F.R. § 541.200(a)(1).

### 2. Kirk's primary duty was the performance of nonmanual work related to Invesco's management and business operations.

Kirk's primary duties with Invesco qualify for the administrative exemption. At all times during the relevant period, Kirk's primary duty was nonmanual work directly related to Invesco's management and general business operations. Kirk was responsible for training IT and non-IT staff on various matters, including certain Microsoft and other applications like ServiceNow and SharePoint. Ex. F, Job Description; Ex. B, Kirk Dep. at 83:13-84:6, 90:12-22, 91:13-18, 115:3-10. Kirk was responsible for planning, developing, and executing training programs, including in-person and online classes, videos, and quick reference guides. Ex. F, Job Description; Ex. B, Kirk Dep. at 114:10-20, 144:14-18; Ex. D, D. Jordan's Dep. at 62:16-25. Kirk specifically testified that she delivered at least 35 training sessions and assisted in developing new hire training, that she created training materials for a two-day class, and that she created, customized, and delivered other training materials. *See* Ex. B, Kirk Dep. at 144:24-146:4, 151:14-23, 152:11-153:1, 178:11-179:3, 181:20-182:5, 200:15-25; Ex. G, 2012 Performance Review at 454, 456; Ex. H, 2013 Performance Review at 467. Kirk spent no less

than 20% of her time (and as much as 25-30%) creating these types of courses or materials or performing training. *See* Ex. B, Kirk Dep. at 89:12-24, 97:2-6, 98:9-12.

Kirk also purchased external training from external vendors, updated Invesco's learning management system, and loaded self-paced training purchased from vendors into the learning management system. Ex. B, Kirk Dep. at 83:13-24. Kirk's duties with respect to training also included booking and enrolling individuals for training classes. *See id.* at 84:7-18, 125:4-7; Ex. A, Soanes Dep. at 48:12-18. With respect to the IT training team and staff, Kirk also managed the IT training team, set goals and objectives, prioritized day-to-day activities for the IT training team, communicated with staff regarding training, and oversaw and performed performance evaluations for the other IT training team member position. Ex. F, Job Description; Ex. B, Kirk Dep. at 83:13-84:6, 116:23-117:9, 120:24-121:14, 121:17-21. Regarding the team member position that reported to Kirk, Kirk told her what to do on a day-to-day basis and highlighted her (i.e., Kirk's) management skills in her 2014 performance review. Ex. B, Kirk Dep. at 184:13-15; *see* Ex. I at 494.

Kirk's duties also required her to track spending, and she also made sure to "report back to management on how much money" was spent. *See* Ex. B, Kirk Dep. at 84:7-8, 85:16-18, 117:1-9. In the course of handling training for all of IT, Kirk's team had to discuss with senior management the money being allocated for external training and whether the team exceeded the budget. *See id.* at 135:5-11. Kirk even highlighted in her performance reviews her involvement with budgetary issues, tracking money, and centralizing spend. *See* Ex. G at 453; Ex. I at 495.

These duties satisfy the second prong of the administrative exemption. *See Bernard v. Grp. Publ'g, Inc.*, 970 F. Supp. 2d 1206, 1224 (D. Colo. 2013) (finding employee exempt under administrative exemption and primary duty satisfied second prong where employee "created

training materials for employees," "trained other employees, and "advised business units about technology options"); *see Krumholz v. Village of Northport*, 873 F. Supp. 2d 481, 489 (E.D.N.Y. 2012) (finding employee exempt under administrative exemption, reasoning employee's duties related to "management and general business operations" of the employer as her duties included matters related to the budget and investing money). Kirk therefore meets the second prong of the administrative exemption.

### 3.    Kirk exercised independent judgment and discretion.

Finally, Kirk demonstrated independent judgment and discretion regarding matters of significance for Invesco in satisfying the third prong of the administrative exemption. "Discretion and independent judgment involves the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). Relevant factors include the employee's "authority to waive or deviate from established policies and procedures without prior approval," whether the employee provides consultation or expert advice to management, and whether the employee is engaged in planning long- or short-term business objectives. *Id.* § 541.202(b). An employee may be deemed to exercise discretion and independent judgment even if they only provide recommendations (rather than make ultimate decisions) and even if their decisions and recommendations are subject to review and even if the employee's decision is revised or reversed. *Id.* § 541.202(c); *see also Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 585 (5th Cir. 2006) (noting that requirement that employee consult with "manuals or guidelines does not preclude their exercise of discretion and independent judgment"). "'[M]atters of significance' refers to the level of importance or consequence of the work performed." 29 C.F.R. § 541.202(c).

Kirk's duties involve the factors listed above. Kirk's training duties included working with IT and others to ensure training programs are proactively identified. Ex. B, Kirk Dep. at 112:15-23. To that end, Kirk was responsible for planning, developing, and executing training programs, including in-person and online classes, videos, and quick reference guides. Ex. F, Job Description; Ex. B, Kirk Dep. at 114:10-20, 144:14-18; Ex. D, D. Jordan Dep. at 62:16-25.

This included creating courses and training plans, including PowerPoint presentations for trainings, which Kirk created by, among other things, taking "key points out of the material" and "putting them into the PowerPoint presentation" and teaching classes and performing and presenting the training. Ex. B, Kirk Dep. at 86:4-19, 88:6-8, 125:4-8, 136:10-137:18, 138:20-22, 139:6-12. As for the PowerPoints themselves, Kirk created them based on her independent knowledge of how to use PowerPoint and her creativity. *See* Ex. B at 141:15-21, 142:5-9, 168:17-25. Similarly, Kirk also designed a SharePoint site which involved deciding where to put certain items. *See id.* at 147:21-148:12. Kirk's duties also included creating, drafting, and sending out IT training newsletters, for which Kirk decided the content, such as classes that are being done and free webinars from vendors. *Id.* at 98:24-99:8, 101:1-10, 101:23-25. Kirk also testified that in performing her duties, such as creating training materials, she had to be creative at times. *Id.* at 155:7-14.

With respect to the IT training team and staff, Kirk also managed the IT training team, set goals and objectives, prioritized day-to-day activities for the IT training team, communicated with staff regarding training, and oversaw and performed performance evaluations for the other IT training team member position. Ex. I; Ex. B, Kirk Dep. at 83:13-84:6, 116:23-117:9, 120:24-121:14, 121:17-21. Regarding the team member position that reported to Kirk, Kirk told her what to do on a day-to-day basis. Ex. B at 184:13-15. Regarding the IT training department,

Kirk made on a day-to-day basis decisions such as whether to update Invesco's Compass system, whether to contact desktop support to ensure software was set up for training and what to work on that day. *See id.* at 248:22-249:13. With respect to Compass, Kirk would maintain the system and ensure that all self-paced training purchased is up-to-date and maintained, including licensing and managing the licensing to employees to have access to the training. *Id.* at 151:8-11; Ex. A, Soanes Dep. at 54:13-25.

Although Kirk did not select vendors for training directly, she was involved in the vendor selection process by, among other things, "rounding up all the information" and keeping track of who the vendor was and the discount the vendor would provide. *See* Ex. B, Kirk Dep. at 103:13-104:19. This included Kirk selecting vendors to call based on having done business with them previously, communicating with the vendors by phone and email, presenting the list from which vendors should be selected to management, and soliciting bids from vendors. *See id.* at 105:8-106:5, 110:10-12, 119:6-25, 120:12-23, 259:25-260:19. Regarding Kirk's presentation of ideas to management, she wrote in her 2014 performance review:

> I've identified changes that were needed and presented those to senior management, and the group approved them all. I think that says a great deal about my ability to recognize changes that need to happen in order for us to move forward and to be able to present them to senior level leaders in a clear and concise fashion. The changes will reduce hours and waste in many of our processes.

Ex. I at 494 (emphasis added).

These duties exhibit the independent judgment and discretion required for the administrative exemption. *See* 29 C.F.R. § 541.202–.203; *Bernard*, 970 F. Supp. 2d at 1225–26 (applying administrative exemption, finding employee exercised discretion and independent judgment where employee, among other things, "created the training materials that were used to train other employees" and proposed group training for other employees which was implemented

13

by the employer, and noting that supervisor's oversight did not detract from discretion exercised); *Crayton v. Valued Servs. of Ala., LLC*, 737 F. Supp. 2d 1320, 1340–42 (M.D. Ala. 2010) (applying administrative exemption, finding exercise of discretion and independent judgment in part because employee "trained as many as 'ten or eleven' employees," "conducted such training largely free from oversight by her supervisors," and "was the primary trainer of new assistant managers"). *Verkuilen v. Mediabank, LLC*, No. 1:09-cv-3527, 2010 U.S. Dist. LEXIS 50538, at *12 (N.D. Ill. May 19, 2010)[5] (applying administrative exemption and noting employee "also conducted training sessions and modified user manuals for clients. All of these duties involved the use of discretion and independent judgment; that she had multiple supervisors who reviewed her work and that she lacked authority to bind the company financially and write its policies does not change that conclusion"); *see also Morales v. Compass Grp., PLC*, No. 2:13-cv-9231, 2014 U.S. Dist. LEXIS 150114, at *21–22 (C.D. Cal. Oct. 16, 2014) (applying administrative exemption under California law and finding employee exercised discretion and independent judgment where employee formulated her own plan to attract people to attend training sessions and had to be knowledgeable about topics covered in training session).[6]

Because Kirk meets each requirement of an exempt employee under the administrative exemption, Kirk is not entitled to recovery on her FLSA claims.

**B.      Kirk cannot meet her burden of proving she performed work for which she was not properly compensated or that Invesco's time records are "inaccurate or inadequate."**

If the Court determines a fact issue precludes summary judgment for Invesco on Kirk's exempt status, Kirk is unable to prove she performed work for which she was not properly

---

[5]      Attached as Exhibit J
[6]      Attached as Exhibit K.

14

compensated. "An employee bringing suit for unpaid wages under the FLSA bears the burden of proving that [s]he performed work for which [s]he was not properly compensated." *Rosales v. Lore*, 149 F. App'x 245, 246 (5th Cir. 2005) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946)). The Fifth Circuit further explained:

> If the employer's records are "proper and accurate," the employee may rely on these records; if the employer's records are "inaccurate or inadequate," the employee may produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." If the employee does so, the employer must "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."

*Id.* (internal citations omitted). In *Rosales*, the court determined that the employees' records were insufficient to create a "just and reasonable inference" in part because they were a "reconstruction prepared after the termination of their employment." *See id.* In making this determination, courts also consider whether the employee can produce "documentary evidence" or "state with specificity particular dates on which their actual work hours were not accurately reflected in the employer's records." *See Gilson v. Indaglo, Inc.*, 581 F. App'x 832, 833 (11th Cir. 2014). To that end, an employee's testimony on its own without specifics as to "which hours [s]he worked in particular weeks or on certain days" has been held to be insufficient to create a just and reasonable inference as to the amount and extent of uncompensated work. *See Carson v. J Curt Inc*, No. 1:06-cv-98, 2008 U.S. Dist. LEXIS 78163, at *3 (N.D. Fla. Sept. 11, 2008).

Kirk cannot prove she performed work for which she was not properly compensated or that Invesco's time records are "inaccurate or inadequate." As noted above, Kirk was required to input her time worked into ServiceNow (and previously Progress), Invesco's time keeping program. Ex. A, Soanes Dep.10:15-11:1, Ex. B, Kirk Dep. 201:20-202:1, 202:15-17. Kirk even

admitted that since the beginning of 2014, she knew she was required to record all of her time in ServiceNow and that even though she knew she was supposed to enter her time accurately, she chose to violate that policy.[7]  *See* Ex. B, Kirk Dep. 220:19-221:6, 222:7-10.  Kirk testified that she had no reason to dispute that Progress and ServiceNow records put before her at her deposition are accurate.  *Id.* at 205:13-20.  Even Kirk's speculative testimony that some of those time records may be accurate while others might not be is of no consequence, as Kirk has not identified any particular dates or time periods during which she performed work for which she was not properly compensated.  *See, e.g., id.* at 218:8-219:4.  And to the extent Kirk claims her Invesco meetings, scheduled trainings, and emails would show the time she was working, that argument fails because Kirk even admitted that these items would not necessarily show when Kirk took a break, whether she was working the entire time, or other reasons she might not have been performing work. *See, e.g.*, Ex. B, Kirk Dep. 212:11-214:16.

Kirk, therefore, cannot show she performed work for which she was not properly compensated, that Invesco's records are inaccurate or inadequate, or provide sufficient evidence to show the amount and extent of that purported work as a matter of just and reasonable inference.

### C.   If Kirk is found to be nonexempt, the fluctuating workweek method applies, and Kirk is entitled only to "half-time" and is not entitled to "time-and-a-half."

If the Court determines a fact issue precludes summary judgment for Invesco on Kirk's exempt status, Kirk is entitled only to half-time under the fluctuating workweek ("FWW") method, not time-and-a-half for any alleged overtime worked.  The FWW method of determining alleged overtime damages calculates the regular rate based on the actual hours worked each

---

[7]     Kirk never entered time from June 2015 through October 2015. Ex. A, Soanes Dep. 19:15-25.

week, resulting in any overtime payment for the week being determined by multiplying the

overtime hours by one-half (as opposed to one-and-one-half) the regular rate for that workweek,

even in misclassification cases. *See Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138–

39 (5th Cir. 1988). As one court in this District has recognized:

> The FWW Method is premised on the idea that, when the parties have agreed on a
> fixed salary for varying hours, the employee's fixed salary is intended to be the
> employee's straight time compensation for all hours worked. If, in litigation, it is
> determined that the employee was misclassified as "exempt," the employee is
> entitled only to the additional half time for hours worked in excess of forty (and
> not time and a half) because his fixed salary already compensated him for all
> straight time hours worked.

*Schreckenbach v. Tenaris Coiled Tubes, LLC*, No. 4:11-cv-4065, 2013 U.S. Dist. LEXIS 6744, at

*34–35 (S.D. Tex. Jan. 16, 2013)[8] (internal citations omitted) (emphasis added). To that end,

pertinent federal regulations state:

> An employee employed on a salary basis may have hours of work which fluctuate
> from week to week and the salary may be paid him pursuant to an understanding
> with his employer that he will receive such fixed amount as straight time pay for
> whatever hours he is called upon to work in a workweek, whether few or
> many. . . . Since the salary in such a situation is intended to compensate the
> employee at straight time rates for whatever hours are worked in the workweek,
> the regular rate of the employee will vary from week to week and is determined
> by dividing the number of hours worked in the workweek into the amount of the
> salary to obtain the applicable hourly rate for the week. Payment for overtime
> hours at one-half such rate in addition to the salary satisfies the overtime pay
> requirement because such hours have already been compensated at the straight
> time regular rate, under the salary arrangement.

29 C.F.R. § 778.114(a).

The FWW may be used where (among other things not relevant here) the employer and

employee have agreed on a fixed salary for varying hours and where the employee understands

that their hours would vary and they would not receive overtime. *See Blackmon*, 835 F.2d at

1138; *Tolentino v. C & J Spec-Rent Servs. Inc.*, No. 2:09-cv-326, 2010 U.S. Dist. LEXIS 69404,

---

[8] Attached as Exhibit M.

at *8–10, n.3 (S.D. Tex. Jul. 12, 2010) (suggesting same and recognizing the court "must follow the *Blackmon* ruling")[9].   To that end, the regulations state that the employee must "clearly understand[] that the salary covers whatever hours the job may demand in a particular workweek and the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked." *See* 29 C.F.R. § 778.114(c).

Kirk clearly understood that her salary was intended to cover all hours worked whether more or less than 37.5; the FWW therefore applies and Kirk would be entitled only to half-time, not time-and-a-half.  Indeed, Kirk's deposition testimony demonstrates that Kirk understood she would be and was paid the same amount regardless of the number of hours she worked, even if she worked more (or less) than 37.5 hours in single week.  *See* Ex. B at 195:1-3, 195:10-15, 195:24-196:7, 255:7-13.  Specifically, Kirk testified as to this understanding in her deposition, where she stated:

> she does not know of any time where she was paid less than her salary when she worked less than 37.5 hours in a week and she in fact received the same paycheck when, for example, she worked 20 hours in a week (*Id.* at 195:1-3, 195:10-15, 195:24-196:3); and

> if she worked more than 37.5 hours in a week, she still got the same paycheck and was paid the same salary (*Id.* at 196:4-7, 255:7-13).

Further, Kirk was not instructed as to when to arrive at and leave work, and her hours fluctuated on a weekly basis. *See* Ex. D at 33:2-6; *see, e.g.*, Ex. F at 3–11.

Accordingly, if the Court determines a fact issue precludes summary judgment for Invesco on Kirk's exempt status, Kirk is entitled only to half-time under the FWW method, not time-and-a-half for any alleged overtime worked.

---

[9] Attached as Exhibit N.

### D.     Kirk cannot show willfulness as a matter of law.

Finally, to the extent that the Court determines that there is a fact issue regarding the FLSA exemptions precluding summary judgment, Kirk is entitled only to a two-year limitations period in this case as a matter of law.  The two-year limitations period applicable to FLSA claims may be extended for an additional year only if a plaintiff proves that his or her employer's violations were willful.  *See* 29 U.S.C. § 255(a); *see also Songer v. Dillon Res., Inc.*, 618 F.3d 467, 470 n.5 (5th Cir. 2010).  The Supreme Court has explained this "two-tiered" statute of limitations "makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988)).  The plaintiff bears the burden of proving that an FLSA violation was willful.  *Lipnicki v. Meritage Homes Corp.*, No. 3:10-cv-605, 2014 U.S. Dist. LEXIS 32951, at *28 (S.D. Tex. Feb. 13, 2014).[10]

A violation is "willful" only if the employer either "'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'"  *See McLaughlin*, 486 U.S. at 133; *see also* 5 C.F.R. § 551.104 (stating that a "[w]illful violation means a violation in circumstances where the [employer] knew its conduct was prohibited by the [FLSA] or showed reckless disregard of the requirements of the [FLSA]").[11]  The term "is generally understood to refer to conduct that is not merely negligent."  *McLaughlin*, 486 U.S. at 133.  As the Supreme Court has noted in this context, the "word 'willful' is synonymous with words like 'voluntary,' 'deliberate,' and 'intentional.'"  *Id.*  Moreover, if the employer acted "reasonably," or even if the employer was "unreasonable, but not reckless, in determining its legal obligation," such conduct

---

[10]     Attached as Exhibit O.

[11]     *See also El v. Potter*, No. 01-cv-6125, 2004 U.S. Dist. LEXIS 24447, at *15 (S.D.N.Y. Dec. 13, 2004) ("Willfulness cannot be found where the employer acted negligently or assumed in good faith, but incorrectly, that its conduct complied with the FLSA."), attached as Exhibit P.

19

is not considered "willful." *Id.* at 135 n.15.  Instead, the court must find the employer's conduct to have been deliberate or, at a minimum, reckless. *Id.* at 135; *see also Mireles v. Frio Foods*, 899 F.2d 1407, 1416 (5th Cir. 1990) (affirming finding that violation was not willful and holding that even conduct that included failure to seek legal advice, negligence, and acting unreasonably did not constitute knowing or reckless disregard of the law).

Kirk can present no evidence that any alleged violation of the FLSA by Invesco was willful.  Indeed, the evidence establishes that Invesco had at the very least a substantial basis to believe that Kirk was properly classified as exempt.  The record before this Court lacks any trace of evidence that Invesco acted willfully to misclassify Kirk under the FLSA.  Kirk therefore cannot meet her burden to trigger a three-year limitations period. *See Claeys v. Gandalf Ltd.*, 303 F. Supp. 2d 890, 893 (S.D. Ohio 2004) (granting summary judgment in favor of employer on two-year statute of limitations where plaintiff "offered no evidence . . . that Defendants acted even recklessly").

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, Invesco asks the Court to grant its Motion for Summary Judgment, order that Kirk's claims be dismissed with prejudice and that she take nothing, and award Invesco such other and further relief to which it is justly entitled.

January 21, 2016

Respectfully submitted,

/s/ Yvette V. Gatling
Yvette V. Gatling (Attorney in Charge)
TX State Bar No. 24007231
Federal ID No.  24321
ygatling@littler.com
1301 McKinney Street, Suite 1900
Houston, Texas 77010
713.951.9400 (Telephone)
713.456.2481 (Facsimile)

ATTORNEYS FOR DEFENDANT INVESCO LTD.

OF COUNSEL

Jonathan Sprague
TX State Bar No. 24075113
Federal ID No. 1132053
jsprague@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, Texas 77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)

## CERTIFICATE OF SERVICE

I certify that on January 21, 2016, a true and correct copy of the foregoing instrument was served upon all counsel of record by electronic notification of the court's filing system, addressed as follows:

Nitin Sud
6750 West Loop South
Suite 920
Bellaire, Texas 77401
nsud@sudemploymentlaw.com

ATTORNEY FOR PLAINTIFF

/s/ Yvette V. Gatling
Yvette V. Gatling

21