United States District Court
Southern District of Texas
**ENTERED**
May 04, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHERYL KIRK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-833 |
| | § | |
| INVESCO, LTD., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] are Plaintiff's Motion for Partial Summary Judgment (Doc. 38) and Defendant's Motion for Summary Judgment (Doc. 43). The court has considered the motions, the responses, replies, sur-replies, the evidence, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's motion be **DENIED** and Defendant's motion be **GRANTED**.

**I. Case Background**

Plaintiff filed this case under the provisions of the Fair Labor Standards Act[2] ("FLSA") against her then-current employer.

Plaintiff began working for Defendant, an asset management firm, as a contract worker in October 2010.[3] Defendant hired Plaintiff on April 15, 2011, as the IT (Information Technology)

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 21.

[2] See 29 U.S.C. §§ 201-219.

[3] See Doc. 42-1, Ex. A to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Lisa Soanes' ("Soanes") 30(b)(6) Dep. p. 22; Doc. 42-2, Ex. B to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Pl.'s Dep. p. 55; Doc. 43-2, Ex. B to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 206.

Training Manager and paid her a salary of $80,000 per year, plus bonuses.[4]  Defendant classified Plaintiff as an exempt employee under the terms of the FLSA.[5]  Lisa Soanes, Defendant's Head of IT Risk and Controls, Software Compliance, and IT Training, became Plaintiff's supervisor sometime in 2012 or 2013.[6]

Plaintiff filed this action on March 31, 2015, against Invesco, Inc.; Invesco, Ltd.; and Invesco Advisers, Inc.[7]  A few weeks later, Plaintiff filed a Notice of Dismissal as to Invesco, Inc., and Invesco Advisors, Inc.[8]  She simultaneously filed an amended complaint to reflect the dismissal of those two defendants.[9]

Plaintiff's only alleged cause of action is a violation of the FLSA's requirements on overtime compensation.[10]  Plaintiff alleged that Defendant misclassified her as an exempt employee, thereby illegally depriving her of overtime pay.[11]  Plaintiff requested

---

[4]   Doc. 42-2, Ex. B to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Pl.'s Dep. pp. 80-81, 185-86.

[5]   See Doc. 38-7, Ex. 7 to Pl.'s Mot. for Partial Summ. J., Def.'s Resps. to Pl.'s 1st Set of Interrogs. No. 1.

[6]   See Doc. 42-3, Ex. C to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Soanes' Dep. pp. 6, 42.

[7]   See Doc. 1, Compl.

[8]   See Doc. 3, Notice of Dismissal.

[9]   See Doc. 4, Pl.'s 1st Am. Compl.

[10]  See id. pp. 2, 5-6.

[11]  See id. p. 5.

2

unpaid overtime wages and FLSA liquidated damages, as well as attorneys' fees and costs.[12] Plaintiff also requested a court order requiring Defendant to pay Plaintiff overtime in the future.[13]

The court held two discovery conferences before referring the case to the undersigned.[14] After referral, the court held several more discovery conferences.[15] In the meantime, Defendant terminated Plaintiff's employment on October 15, 2015, "for a series of e-mails and performance issues that occurred previously and leading up to that day."[16]

In late December 2015, Plaintiff initiated dispositive-motion practice with the filing of the pending Motion for Partial Summary Judgment.[17] Defendant followed suit with the filing of the pending Motion for Summary Judgment.[18] During the course of briefing the motions, the parties attempted mediation but were unsuccessful in resolving the suit.[19]

---

[12] See id. p. 6.

[13] See id.

[14] See Doc. 13, Min. Entry Dated Sept. 1, 2015; Doc. 18, Min. Entry Dated Oct. 14, 2015; Doc. 21, Order Dated Oct. 28, 2015.

[15] See Doc. 28, Min. Entry Dated Nov. 3, 2015; Doc. 34, Min. Entry Dated Nov. 18, 2015; Doc. 40, Min. Entry Dated Jan. 7, 2016; Doc. 51, Min. Entry Dated Feb. 11, 2016.

[16] Doc. 48-5, Ex. 21 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Soanes' Dep. p. 29.

[17] See Doc. 38, Mot. for Partial Summ. J.

[18] See Doc. 43, Mot. for Summ. J.

[19] See Doc. 53, Alt. Dispute Resolution Mem.

The briefing is complete, and the court now addresses the two pending dispositive motions. Plaintiff seeks the following three rulings: (1) that she was misclassified as an exempt employee; (2) that Defendant did not act in good faith in classifying her as exempt, resulting in liability for liquidated damages in the same amount as actual damages; and (3) that Plaintiff is entitled to actual damages for unpaid overtime work in an amount calculated pursuant to the time-and-a-half method rather than the fluctuating-workweek ("FWW") method.

Defendant argues that it properly classified Plaintiff as exempt under the administrative exemption. Defendant further argues, should the court find a fact issue as to Plaintiff's exempt status: (1) that it acted in good faith; (2) that the FWW method applies to calculate overtime damages; (3) that Plaintiff produced no evidence that Defendant acted willfully, thus limiting the statute of limitations to two years; and (4) that Plaintiff produced insufficient evidence to establish that she worked any hours for which she was not fully compensated.

At the core level, this is a suit for unpaid overtime compensation. The parties disagree on a number of preliminary and ancillary issues including whether Plaintiff is even entitled to overtime pay at all and, if so, at what rate and in what amount. However, none of those issues matter if Plaintiff has failed to produce sufficient, competent summary judgment evidence to raise a

fact issue on whether she worked more than forty hours in any week during her employment.  The court begins and, as it happens, ends with the issue of overtime evidence.[20]

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists on any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex

---

[20]  Because the court does not reach any of the other arguments, the court does not need to consider evidence relevant only to those arguments.  As a result, the court **OVERRULES AS MOOT** the parties' objections to the admissibility of Plaintiff's 2012, 2013, and 2014 performance reviews and the first page of Marguerite Novak's 2010 performance review.

Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). The movant may meet this burden by demonstrating an absence of evidence in support of one or more elements of the case for which the nonmovant bears the burden of proof. See Celotex Corp., 477 U.S. at 322; Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070, 1074 (5th Cir. 1997).

If the moving party carries its burden, the nonmovant may not rest on the allegations or denials in his pleading but must respond with evidence showing a genuine factual dispute. Stauffer, 741 F.3d at 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown v. City of Hous., Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). If the evidence would not allow a reasonable jury to decide the dispute in favor of the nonmovant, the dispute is not genuine. See Scott v. Harris, 550 U.S. 372, 380 (2007)(citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

When the parties file cross-motions for summary judgment, the court must "review each party's motion[] independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." Tidewater Inc. v. United States, 565 F.3d 299, 302 (5th Cir. 2009)(quoting Ford Motor Co. v. Tex. Dep't of Transp., 264 F.3d 493, 499 (5th Cir. 2001)). The successful movant will

carry its "burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Shaw Constructors v. ICF Kaiser Eng'rs, 395 F.3d 533, 538-39 (5th Cir. 2004).

### III. Analysis

The FLSA generally requires employers to compensate employees at a rate of not less than one and one-half times the regular hourly rate for the hours worked in excess of forty per week. See 29 U.S.C. § 207(a)(1); Coffin v. Blessey Marine Servs., Inc., 771 F.3d 276, 279 (5th Cir. 2014). An action for unpaid overtime compensation requires proof of: (1) "an employer-employee relationship during the unpaid overtime periods claimed;" (2) FLSA coverage of the plaintiff's activities; (3) the employer's violation of the FLSA's overtime wage requirements; and (4) the amount of overtime compensation owed. Johnson v. Heckmann Water Res. (CVR), Inc., 758 F.3d 627, 630 (5th Cir. 2014). An FLSA plaintiff bears the burden of proof on all elements of her claim. Samson v. Apollo Res., Inc., 242 F.3d 629, 636 (5th Cir. 2001).

"An employee bringing an action pursuant to the FLSA, based on unpaid overtime compensation, must first demonstrate that she has performed work for which she alleges she was not compensated." Ihegword v. Harris Cty. Hosp. Dist., 555 F. App'x 372, 374 (5th Cir. 2014)(unpublished)(quoting Harvill v. Westward Commc'ns, LLC, 433 F.3d 428, 441 (5th Cir. 2005)). A plaintiff may rely on the

employer's records if they are "proper and accurate" or, if the records are "inaccurate or inadequate," may produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Rosales v. Lore, 149 F. App'x 245, 246 (5th Cir. 2005)(unpublished)(quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)); see also Ihegword, 555 F. App'x at 374.

If the plaintiff carries her burden, the burden shifts to the employer to produce either "evidence of the precise amount of work performed" or evidence that counters the reasonableness of drawing an inference in favor of the plaintiff. Ihegword, 555 F. App'x at 374 (quoting Harvill, 433 F.3d at 441); Rosales, 149 F. App'x at 246 (Anderson, 328 U.S. at 687-88). The employer's failure to meet the shifted burden results in an award of damages to the plaintiff, even if the amount of the award is only approximate. Ihegword, 555 F. App'x at 374 (quoting Harvill, 433 F.3d at 441).

Recently, the Fifth Circuit decided an appeal that is instructive here. In Fairchild v. All Am. Check Cashing, Inc., 815 F.3d 959, 963, 964 (5th Cir. 2016), the plaintiff sought payment for overtime hours that she allegedly worked during two periods when she was classified as an hourly employee. The employer's policies prohibited hourly employees from working overtime without prior approval and required that all employees accurately report the hours they worked in its timekeeping system. Id. at 963. The

8

plaintiff neither sought authorization to work the overtime in question nor reported it through her employer's timekeeping system. Id. at 965. In fact, according to her testimony, she intentionally did not report the unauthorized overtime because her employer prohibited it. Id.

The district court did not accept the plaintiff's assertion, as to the first period claimed, that her employer had knowledge that she worked overtime on the basis of computer usage reports. Id. The plaintiff did not offer computer usage reports in support of the hours she allegedly worked during the second period, and the district court found that the only evidence of overtime work was her own unsubstantiated testimony. See id.

The Fifth Circuit affirmed, stating that the plaintiff could not prevail on the overtime claim for hours that she deliberately failed to report in violation of her employer's policy and that her employer had no reason to believe she had worked. See id. The Fifth Circuit also found that the district court did not clearly err in finding that the plaintiff failed to produce sufficient evidence that she had worked any overtime. See id. On the insufficiency of evidence, the Fifth Circuit compared the case to Iheqword, an unpublished case in which the court had found that "unsubstantiated assertions speculated from memory" were not enough to sustain an overtime claim. See id. (quoting Iheqword, 555 F. App'x at 375). In the Iheqword opinion, the Fifth Circuit agreed

with the district court that "an unsubstantiated and speculative estimate of uncompensated overtime does not constitute evidence sufficient to show the amount and extent of that work as a matter of just and reasonable inference."  Iheqword, 555 F. App'x at 375.

Here, Defendant moved for summary judgment in its favor on the basis that Plaintiff cannot prove that she performed work for which she was not properly compensated.  Defendant submitted time records for the weeks of March 25, 2013, through February 8, 2015, and most of the following weeks through June 7, 2015.[21]  By the court's count, the records report work hours for 112 weeks.[22]  They record more than forty but less than fifty hours of work during forty-one weeks, fifty or more but less than sixty during twenty-one weeks, and sixty or more during nine weeks.[23]

Plaintiff takes issue with the Defendant's time records, alleging that they are not accurate and they are not complete. On the first issue, Plaintiff contends that Defendant's time records were not accurate and underreported the hours that she worked. Plaintiff's deposition testimony leaves no question that the records were inaccurate.

Plaintiff testified that, when she transitioned from contract worker to IT Training Manager, her then-supervisor, David Jordan

---

[21]   See Doc. 43-5, Ex. E to Def.'s Mot. for Summ. J., Pl.'s time records.

[22]   See id.

[23]   See id.

10

("Jordan") told her, "Your time is not going to be billed back to any projects or you're not going to be working really on any projects, so it doesn't really matter what you put in there."[24] Later in her deposition, she reiterated that she was told that it did not matter what category or task she selected or how many hours she reported in the timekeeping system because she was a manager and was not being paid by the hour.[25]

Although she was aware, at least from the beginning of 2014, that she was required to report accurately the time she worked, she admitted that she "just randomly" put in how many hours she had worked, for some weeks less than forty and for others forty or more.[26] She further impeached the accuracy of her time reporting:

> This is not a true, you know, recording of anybody's hours. This is just a project management tracking system. These don't get fed into the, the time and attendance program that actually pays people. So this is simply just to track how much is -- hours are spent on projects. It's not meant to pay anybody.
>
> . . . .
>
> Again to me this is, this is me filling in numbers to make sure that management doesn't get on a report [sic]. Doesn't have anything to do with how many hours I'm actually working.[27]

---

[24] Doc. 48-4, Ex. 20 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 206.

[25] See id. p. 210.

[26] See id. pp. 210; Doc. 43-2, Ex. B to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 220-22.

[27] Doc. 48-4, Ex. 20 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 211-12.

Because Plaintiff's time reporting "[did not] have anything to do with how many hours [she] actually work[ed],"[28] none of the records are reliable, not even for the weeks in which she reported working more than forty hours. Even though Plaintiff estimated that she worked "more than sixty hours a week on average," she was unable even to verify the accuracy of the few sixty-plus-hour weeks (nine out of 112) that she did report.[29] In fact, she testified, "I couldn't tell you whether they're accurate or not based upon -- I think they would be closer than the previous time."[30] Therefore, by her own doing and according to her own admission, the time records were completely inaccurate.

With regard to their completeness, Plaintiff argues that the relevant time frame is March 31, 2012, through October 15, 2015,[31] not March 25, 2013, through June 7, 2015. The court assumes Plaintiff is correct and considers all evidence of the hours she worked during the longer period. Because the submitted time

---

[28] Id. p. 212.

[29] See id. pp. 206, 210-12.

[30] Id. p. 211; see also Doc. 43-2, Ex. B to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 218 (stating that "they may not be entirely accurate"). Plaintiff explained that she had a reason other than accuracy for reporting more hours: she wanted to alert her supervisor that she was performing the work of two employees. See Doc. 48-4, Ex. 20 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 210.

[31] According to Plaintiff, the relevant time period began three years prior to the filing of the suit. This is based on her assertion that Defendant acted willfully in misclassifying her position as exempt. Although the court does not enter a ruling on willfulness, the court assumes, for purposes of this memorandum, that a three-year statute of limitations applies.

records are incomplete,[32] they are inadequate as well as inaccurate. Having successfully established that Defendant's time records are both inaccurate and inadequate, Plaintiff bears the burden of producing "sufficient evidence to show the amount and extent of [her] work as a matter of just and reasonable inference." Ihegword, 555 F. App'x at 374; Rosales, 149 F. App'x at 246.

The evidence includes a few statements about Plaintiff's working hours. Jordan testified that he did not instruct Plaintiff on what her working hours should be when she became the IT Training Manager.[33] Soanes, who followed Jordan as Plaintiff's supervisor, stated in a July 2015 Performance Improvement Plan that Plaintiff had worked from home without informing Soanes, which was unacceptable, but that working from home was acceptable with advance approval.[34] At her deposition, Plaintiff testified that her office hours varied, depending on her training responsibilities.[35]

Plaintiff intimated, in her deposition testimony, that she could verify the hours she worked by comparing the time sheets with

---

[32] For the time period following the week of June 7, 2015, Plaintiff stopped submitting time sheets. See Doc. 43-1, Ex. A to Def.'s Mot. for Summ. J., Soanes' Dep. p. 19; Doc. 48-8, Ex. 24 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Final Written Warning p. 2.

[33] See Doc. 42-4, Ex. D to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Jordan's Dep. p. 33.

[34] See Doc. 48-7, Ex. 23 to Pl.'s Resp. to Def.'s Mot. for Summ. J. p. 3.

[35] See Doc. 42-2, Ex. B to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Pl.'s Dep. p. 196.

her calendar.[36] When asked whether she had done so, Plaintiff responded, "I don't think I did, no."[37] Regardless, Plaintiff did not submit her calendar or any evidence of hours worked based on documentation in her calendar. Rather, as evidence of the hours she actually worked, Plaintiff submitted a list of the dates and times at which she sent emails,[38] four GPS (global positioning system) timelines,[39] and the deposition testimony of her mother.[40] Defendant challenges the admissibility of all three of these exhibits. Defendant argues that the first two exhibits are not authenticated, contain hearsay, and are not relevant and that the third includes testimony that was not based on personal knowledge.

Although Plaintiff did not provide an affidavit to authenticate the first two exhibits, the court finds that the issue could be resolved quite easily. The list and the timelines appear to be created and/or generated by Plaintiff, and she should be able to affirm that they are what she claims them to be. See Fed. R. Evid. 901(a). The list and timelines do not contain hearsay, as they are submitted to indicate hours worked rather than the actual

---

[36] See Doc. 43-2, Ex. B to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 219.

[37] Id.

[38] See Doc. 48-9, Ex. 25 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Email List.

[39] See Doc. 48-10, Ex. 26 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Timelines.

[40] See Doc. 48-11, Ex. 27 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Nancy Kirk's Dep. Excerpts.

truth of their contents. See Fed. R. Evid. 801(c). They are relevant to the amount and extent of Plaintiff's work. See Fed. R. Evid. 401. Plaintiff's mother's deposition testimony is admissible with regard to her personal observations, but all speculations therein are not competent summary judgment evidence. Defendant's objections to the email list and timelines are **OVERRULED**. Defendant's objections to Plaintiff's mother's deposition testimony is

The court turns to the content of these exhibits. The email list included five groups of consecutive days during which Plaintiff sent emails over certain time periods.[41] The first set covered the dates September 18 and 19, 2013.[42] On those days, the email times spanned six hours and one hour and forty-one minutes respectively.[43] The second set covered March 15, 2014, to March 17, 2014, and included a Saturday and a Sunday.[44] The email times spanned one hour and thirty-two minutes on Saturday, about two hours on Sunday, and about three hours and forty-five minutes on Monday.[45]

The third set covered Friday, Saturday, and Sunday, August 8,

---

[41] See Doc. 48-9, Ex. 25 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Email List.

[42] See id. p. 5.

[43] See id.

[44] See id. p. 4.

[45] See id.

15

2014, through August 10, 2014.[46] The email times spanned thirty-nine minutes on Friday, six hours and thirty-nine minutes on Saturday, and just under ten hours on Sunday.[47] The fourth set covered November 5, 2014, through November 6, 2014, and included blocks of email time that together totaled six hours and eleven minutes for the two days.[48] The fifth set covered May 4, 2015, through May 5, 2015, and included blocks of email time that together totaled about twelve hours for the two days.[49]

The times recorded for sent emails during those sets of dates were not all during typical business hours. However, nothing indicates that Plaintiff did any other work on these days and nothing rules out that she adjusted the hours she worked on other days to compensate for early morning, evening, or weekend hours worked. The total number of hours for each set of consecutive days did not even come close to forty hours, a weekly prerequisite for working overtime. In fact, the most hours recorded in any of the sets were a little more than seventeen.

Similarly, the GPS timelines are snapshots of single days and hardly suggest that Plaintiff worked more than forty hours in any given week. The timeline dates are Monday, December 9, 2013;

---

[46] See id. p. 3.

[47] See id.

[48] See id. p. 2.

[49] See id. p. 1.

16

Monday, April 21, 2014; Thursday, September 11, 2014; and Tuesday, March 10, 2015.[50] They suggest that Plaintiff was at "Work" for thirteen hours and thirty-eight minutes, eleven hours and fourteen minutes, eleven hours and twenty-four minutes, and seven hours and eleven minutes respectively.[51] None of these days are in the same week as any of the other three or as any of the dates on the email list. Evidence of one long work day on its own does not allow an inference of a workweek in excess of forty hours.

Not only do these two exhibits fail to raise the question whether Plaintiff worked more than forty hours in any week, collectively they cover only nine weeks out of the 185 weeks Plaintiff claims to be the relevant period. No reasonable jury could draw the conclusion from this evidence that Plaintiff worked sixty hours per week on average. Moreover, Plaintiff admitted in her deposition that knowing when the first and last emails were sent would not account for breaks, lunch, doctor appointments, and any other periods when she was not working during the day.[52]

The final piece of evidence Plaintiff offers in support of her claim that she worked more than forty hours a week is the

---

[50]   See Doc. 48-10, Ex. 26 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Timelines.

[51]   See id.

[52]   See Doc. 43-2, Ex. B to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 212-14.

17

deposition testimony of her mother, Nancy Kirk ("Nancy").[53] Nancy testified that she observed Plaintiff working periodically during visits to Nancy's home on weekday evenings.[54] Nancy estimated that Plaintiff would appear to be working on and off from 7:00 p.m. to 11:00 p.m. or midnight.[55] Plaintiff also used Nancy's land-line telephone on occasion for conference calls in the early morning hours.[56]

Nancy admitted that Plaintiff never told her how many hours per week on average that she worked and that Nancy had no way of knowing whether Plaintiff took any personal time when she was working at Defendant's offices.[57] Nancy said that Plaintiff emailed to notify Nancy when Plaintiff got home late from the office.[58] Nancy also admitted that she did not have personal knowledge of what Plaintiff was doing when she was on the computer at Nancy's house, having actually seen identifiable work on the computer screen only four or five times.[59] Nancy said that she would walk

---

[53] See Doc. 48-11, Ex. 27 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Nancy Kirk's Dep.

[54] See id. pp. 19-20.

[55] See id. p. 20.

[56] See id. pp. 38-39.

[57] See id. p. 21; Doc. 55-3, Ex. 3 to Def.'s Reply in Support of its Mot. for Summ. J., Nancy's Dep. pp. 40-41.

[58] See Doc. 55-3, Ex. 3 to Def.'s Reply in Support of its Mot. for Summ. J., Nancy's Dep. p. 40.

[59] See id. pp. 37-38.

into the room of her house where Plaintiff was on the computer or telephone "off-and-on."[60]

Nancy's testimony supports a finding that Plaintiff worked outside of normal business hours and worked away from the office at times. However, it lacks the specificity necessary to determine when those hours may have put her over forty hours of work in any given week. To extrapolate that Plaintiff worked any overtime, much less twenty hours of overtime per week, from Nancy's testimony is purely to speculate.

Plaintiff's attempt at reconstructing the actual hours she worked fails. Her snapshots of hours worked on a few days and her mother's observations of Plaintiff on unspecified evenings and mornings does not lead to a just and reasonable inference that Plaintiff worked more than forty hours during any week of her employment. Therefore, Plaintiff cannot maintain her suit for the payment of overtime work. As this recommendation is dispositive of the case, the court need not address the other disputes of the parties.

### IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's motion be **DENIED** and Defendant's motion be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days

---

[60]  Id. p. 37.

from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 4th day of April, 2016.

_____
U.S. MAGISTRATE JUDGE